# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| FUCHS FAMILY TRUST, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **C.A. No. 9986-VCN** |
| | : | |
| PARKER DRILLING COMPANY, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

Date Submitted: November 12, 2014
Date Decided: March 4, 2015

Joel Friedlander, Esquire and Christopher Foulds, Esquire of Friedlander & Gorris, P.A., Wilmington, Delaware; Benny C. Goodman III, Esquire, Laurie L. Largent, Esquire, and Christopher D. Stewart, Esquire of Robbins Geller Rudman & Dowd LLP, San Diego, California; and Joe Kendall, Esquire and Jamie J. McKey, Esquire of Kendall Law Group, LLP, Dallas, Texas, Attorneys for Plaintiff.

Srinivas M. Raju, Esquire and Robert L. Burns, Esquire of Richards, Layton & Finger, P.A., Wilmington, Delaware, and Samuel W. Cooper, Esquire and Christie A. Mathis, Esquire of Paul Hastings LLP, Houston, Texas, Attorneys for Defendant.

NOBLE, Vice Chancellor

# I. BACKGROUND

Based in Houston, Texas, Defendant Parker Drilling Company ("Parker" or the "Company") is a Delaware corporation providing drilling and drilling-related services. As an issuer under the federal securities laws, Parker is subject to the Foreign Corrupt Practices Act (the "FCPA").[1] The FCPA prohibits covered companies from bribing foreign officials and requires those companies to adopt and maintain preventive internal controls and accounting records.

On August 9, 2007, Parker disclosed that the United States Department of Justice (the "DOJ") had requested information regarding the Company's use of a freight forwarding and customs agent. The DOJ was concerned about FCPA compliance and had apparently requested similar information from several other companies. Early the next year, Parker disclosed that the Securities and Exchange Commission (the "SEC") had demanded the same information. Soon thereafter, the Company acknowledged that both agencies were investigating potential FCPA violations relating to Parker's business in Kazakhstan and Nigeria, and that the Company was conducting its own internal investigation.

In 2010, Parker disclosed (the "2010 Disclosure") that its internal investigation "ha[d] identified issues relating to potential non-compliance with applicable laws and regulations, including the FCPA, with respect to operations in

---

[1] Foreign Corrupt Practices Act of 1977, as amended, 15 U.S.C. § 78dd-1, *et seq*.

Kazakhstan and Nigeria."[2]  In response, a stockholder made demand on Parker's board (the "Stockholder Demand") to take action "to remedy breaches of fiduciary duties by the directors and certain officers of the Company . . . ."[3]  The board formed a special committee (the "Special Committee") to evaluate the Stockholder Demand and determine an appropriate course of action.

Also soon after the 2010 Disclosure, various stockholders filed derivative actions in Texas state courts.  These actions, one filed by Plaintiff Fuchs Family Trust ("Fuchs"), were consolidated and restyled *In re Parker Company Derivative Litigation* (the "State Court Derivative Action").[4]  Plaintiffs in the State Court Derivative Action alleged that Parker's directors and executives had breached their fiduciary duties by failing to implement and maintain internal controls to comply with laws, including the FCPA.  The plaintiffs pleaded that demand on Parker's

---

[2] Joint Exhibit ("JX") 5.

[3] JX 7.  Fuchs objected to consideration of the contents of the Stockholder Demand, as well as several SEC filings, on hearsay grounds.  In the Pre-Trial Stipulation and Order (the "Pre-Trial Order"), Fuchs admitted that the Company received the Stockholder Demand and that Parker later reported that it had decided not to take action.  ¶¶ 8; 32.  The Stockholder Demand establishes that Parker received that request, rather than the truth of any assertions therein.  Further, "[d]espite the fact that a SEC filing may constitute hearsay with respect to the truth of the matters asserted therein, courts may consult these documents to ascertain facts appropriate for judicial notice under D.R.E. 201." *In re Santa Fe Pac. Corp. S'holder Litig.*, 669 A.2d 59, 70 n.9 (Del. 1995).  That a stockholder made demand on Parker's board, and that the board refused to pursue action, has been established. Regardless, these facts are not necessary for resolving this matter.

[4] JX 11.

board was futile because the members faced a substantial likelihood of liability for breaching their duties of loyalty.

Parker moved to dismiss the State Court Derivative Action, asserting that plaintiffs had inadequately pleaded demand futility. The court dismissed the action without prejudice, after which the plaintiffs filed an amended petition. Parker again moved to dismiss on substantially the same basis as its first motion. The court dismissed the amended petition, again without prejudice.[5]

While this litigation was ongoing, another stockholder derivative action (the "Freuler Action") was lodged in the United States District Court for the Southern District of Texas (the "Texas federal court"). The Freuler Action also addressed the Company's FCPA-related issues. As with the State Court Derivative Action, Parker moved for dismissal based on plaintiff's failure to plead demand futility sufficiently. The court dismissed the Freuler Action, allowing the plaintiff (the "Freuler Plaintiff") opportunity to replead.[6] The court subsequently dismissed an

---

[5] JX 31 (July 23, 2012, Order *In re Parker Drilling Co. Deriv. Litig.*, Master File No. 2010-34655, 61st Dist. Ct., Harris Cnty., Tex.).
[6] JX 16 (Opinion and Order, *Freuler v. Parker, Jr.*, CA H-10-3148 (S.D. Tex. June 30, 2012) ("First Federal Court Dismissal")).

3

amended complaint with prejudice for failure to demonstrate demand excusal.[7] The United States Court of Appeals for the Fifth Circuit affirmed the dismissal.[8]

On February 15, 2013, Parker announced that it had reached an agreement in principle to settle the DOJ and SEC investigations. Two months later, the Company settled with the agencies, entering into a three-year deferred prosecution agreement ("DPA") with the DOJ and a civil settlement with the SEC (together, the "Settlement"). Parker agreed to pay $15.85 million in fines, penalties and disgorgement, consented to a permanent injunction against FCPA violations, and adopted new internal controls to bring the Company into compliance with the FCPA's books and records provisions. The DPA noted Parker's cooperation with the investigation and its extensive remediation.[9] Further, Parker has "end[ed] its business relationships with [the] officers, employees, or agents primarily responsible for the corrupt payments."[10]

The papers accompanying the Settlement (the "Resolution Papers") described a bribery scheme (the "Nigerian Bribing Scheme"), that violated the FCPA, stemming from Parker's operations in Nigeria between 2001 and 2004. Parker admitted that two senior executives, identified only as "Executive A" and

---

[7] JX 19 (Opinion and Order of Dismissal, *Freuler v. Parker, Jr.*, CA H-10-3148 (S.D. Tex. Mar. 14, 2012) ("Second Federal Court Dismissal")).
[8] JX 37 (Opinion, *Freuler v. Parker Jr.*, Case No. 12-20260 (5th Cir. Mar. 11, 2013)).
[9] JX 41, ¶ 4.
[10] *Id.*

"Executive B", had funneled $1.25 million in bribes to Nigerian officials through a partner ("Outside Legal Counsel") at the law firm retained by the Company (the "Law Firm").

By July 29, 2013, the Special Committee had finished assessing the Stockholder Demand. The Special Committee recommended that the Company not pursue action against the individuals named in the Stockholder Demand, and the board accepted this recommendation.

On November 15, 2013, Fuchs sent an inspection demand (the "Inspection Demand"), pursuant to 8 *Del. C.* § 220, to Parker's board.[11] The letter described the misconduct disclosed in the Resolution Papers and stated that inspection was sought for "(1) investigating possible mismanagement and breaches of fiduciary duties; and (2) investigating violations of law by the current and former officers and directors of the Company in connection with Parker's violations of the [FCPA]."[12]

On December 3, 2013, Parker rejected the Inspection Demand, which had requested eight separate categories of documents. Parker cited technical defects and expressed its belief that Fuchs had failed to state a proper purpose or a credible basis for inspection.[13] Fuchs has since narrowed the scope of its demand to

---

[11] JX 52. Fuchs had requested inspection pursuant to Texas law on June 10, 2013.
[12] *Id.* at 1.
[13] JX 54.

5

"[d]ocuments sufficient to identify Executive A, Executive B, Law Firm and Outside Counsel."[14] It "seeks to assess the options, with the aid of counsel, for potential litigation and/or to demand that the Company take action."[15] Fuchs's inspection demand action was tried on a paper record.[16]

## II. ANALYSIS

"Stockholders of Delaware corporations enjoy a qualified common law and statutory right to inspect the corporation's books and records."[17] "Any stockholder, in person or by attorney or other agent, shall, upon written demand under oath stating the purpose thereof, have the right . . . to inspect for any proper purpose . . . [t]he corporation's . . . books and records . . . ."[18] In order to exercise this powerful right, "a stockholder has the burden of proof to demonstrate a proper purpose by a preponderance of the evidence."[19]

A proper purpose is defined as one "reasonably related to such person's interest as a stockholder."[20] A desire to investigate wrongdoing or mismanagement is a proper purpose; however, such investigation "must be to some end. Delaware

---

[14] JX 72, at 5.

[15] *Id.* at 1.

[16] This memorandum opinion sets forth the Court's findings of fact and conclusions of law.

[17] *Saito v. McKesson HBOC, Inc.*, 806 A.2d 113, 116 (Del. 2002).

[18] 8 *Del. C.* § 220(b)(1).

[19] *Seinfeld v. Verizon Commc'ns, Inc.*, 909 A.2d 117, 121 (Del. 2006).

[20] 8 *Del. C.* § 220(b).

6

law does not permit section 220 actions based on an ephemeral purpose, nor will this court impute a purpose absent the plaintiff stating one."[21]

When a stockholder's stated purpose is to investigate wrongdoing or mismanagement, it must establish a credible basis to support an inference that waste or mismanagement occurred.[22] This relatively minimal burden allows stockholders to exercise a valuable right while protecting corporations from demands based on mere suspicion or curiosity.[23]

## A. *Fuchs's Stated Purposes*

Fuchs's stated purposes have evolved over time. In its first demand letter, sent on November 15, 2013, Fuchs described its intentions as "(1) investigating possible mismanagement and breaches of fiduciary duties; and (2) investigating violations of law by the current and former officers and directors of the Company in connection with Parker's violations of the [FCPA]."[24] In the Complaint, filed July 31, 2014, Fuchs expressed a desire to "investigat[e] corporate wrongdoing and mismanagement for potential litigation."[25] Then, on November 4, 2014, after both parties had filed opening pre-trial briefs, Fuchs sent to Parker an updated demand

---

[21] *W. Coast Mgmt. & Capital, LLC v. Carrier Access Corp.*, 914 A.2d 636, 646 (Del. Ch. 2006).
[22] *Seinfeld*, 909 A.2d at 122.
[23] *Id*. at 123.
[24] JX 52, at 1.
[25] Compl. ¶ 31.

letter, explaining its intention to "assess the options, with the aid of counsel, for potential litigation and/or to demand that the Company take action."[26]

A Section 220 action is not for the merely curious. There must be some purpose that would benefit the corporation and its stockholders, and not just the idiosyncratic notions of one stockholder. Fuchs has not been as constant and as focused on its ultimate objective as one might expect.[27] It has (at various times) identified two ends to where its investigation might lead: (i) a derivative action or (ii) a demand on Parker's board.[28] However, collateral estoppel would bar Fuchs

---

[26] JX 72, at 1.

[27] Indeed, during his deposition, Fuchs's sole trustee and manager could not identify those objectives, beyond deferring to the guidance of counsel. JX 68 (Dep. Tr. of Paul Joseph Fuchs, Oct. 16, 2014) 105-06.

[28] "[T]o warrant relief from this court, a demand for books and records must be sufficiently specific to permit the court (and the corporation) to evaluate its propriety." *Norfolk Cnty. Ret. Sys. v. Jos. A. Bank Clothiers, Inc.*, 2009 WL 353746, at *11 (Del. Ch. Feb. 12, 2009), *aff'd*, 977 A.2d 899 (Del. 2009). The only end goals Fuchs has identified in its Complaint and demand letters are derivative litigation and board demand. Section 220 requires a stockholder to state its purpose in its written demand. That Fuchs has vaguely referenced "in a conclusory manner, [other] generally accepted proper purpose[s]" is of no effect in this case. *See, e.g.*, *W. Coast Mgmt. & Capital*, 914 A.2d at 646. "[U]nless a demand in itself unspecific as to purpose can in some way successfully be given an expanded reading viewed in the light of surrounding circumstances . . . a vague demand without more must a fortiori be deemed insufficient." *Norfolk Cnty. Ret. Sys.*, 2009 WL 353746, at *11 (quoting *Weisman v. W. Pac. Indus., Inc.*, 344 A.2d 267, 269 (Del. Ch. 1975)). "[I]t may be safely assumed that neither the corporation nor the Court will be required or inclined to engage in speculation as to the stated purpose for the demand . . . ." Donald J. Wolfe, Jr. & Michael A. Pittenger, *Corporate and Commercial Practice in the Delaware Court of Chancery*, § 8.06[e][2], at 8-141 (2014). Here, the surrounding circumstances do

8

from pursuing further derivative litigation. While Fuchs may demand that Parker take action in relation to the past FCPA violations, the documents it seeks are unnecessary for that course of action.[29]

B. *The Scope of Fuchs's Demand*

While Fuchs initially requested eight categories of documents, it subsequently narrowed the scope of its demand. The Complaint requests documents sufficient to identify Executives A and B and Outside Legal Counsel.[30] In its pre-trial opening brief, Fuchs reaffirmed: "Plaintiff only seeks four pieces of

---

not warrant reading the reasons behind Fuchs's purpose beyond those it has specifically identified.

[29] The Section 220 demand that Fuchs made before initiating this litigation apparently was defective when made because it did not demonstrate ownership of Parker stock. Parker identified this shortcoming in its answer. *See* Answer ¶ 6 ("[Fuchs's demand] includes a Statement of Account showing only that an unidentified account held stock in the Company, which the Statement of Account states was purchased on April 16, 2009."). A week before trial, Fuchs updated its demand and provided documentation that Parker concedes is sufficient evidence of ownership. A demand's compliance with the technical requirements of Section 220 is measured as of the time of the demand. *See, e.g.*, *Cent. Laborers Pension Fund v. News Corp.*, 45 A.3d 139, 145 (Del. 2012) ("The requirements in section 220 protect 'corporations from improper demands by requiring that *evidence of beneficial ownership be both furnished with the demand and provided under oath*." (emphasis in original) (quoting *Seinfeld v. Verizon Commc'ns Inc.*, 873 A.2d 316, 317 (Del. Ch. 2005)); *Barnes v. Telestone Techs. Corp.*, 2013 WL 3480270, at *2 (Del. Ch. July 10, 2013) (explaining that stockholders must "provid[e] documentary evidence of stock ownership at the time the plaintiff made its initial demand to the company."). Parker no longer pushes this argument and stipulated that Fuchs is a stockholder, perhaps because Fuchs could simply make a new demand and substantially the same issues would require consideration in the short term anyway.

[30] Compl. ¶¶ 4; 26.

information—documents sufficient to identify the persons and entities identified in [the DPA] as 'Executive A,' 'Executive B,' 'Law Firm,' and 'U.S. Outside Counsel.'"[31]

On November 4, 2014, just eight days before trial, Fuchs issued a supplemental inspection demand, to provide, in part, sufficient proof of its beneficial ownership of Parker stock.[32] In addition to requesting documents sufficient to identify the anonymous wrongdoers, Fuchs attempted to broaden its demand (shortly before trial and after briefing had commenced) to include any report prepared by Parker's board, or any committee thereof, concerning investigation of the Nigerian Bribing Scheme, and all documents relied upon by the board or any committee thereof.[33]

Given the circumstances, Fuchs's late attempt to expand its inspection must be rejected.[34] "Strict adherence to the section 220 procedural requirements for

---

[31] Pl.'s Corrected Opening Pre-Trial Br. 13.

[32] JX 72.

[33] This was Fuchs's only new request. *See* Pre-Trial Order ¶ 42 ("[The November 14, 2014, letter] added a new request.").

[34] In the Pre-Trial Order, Fuchs stated its intention to move to supplement its Complaint either before trial or in conformity with the evidence presented at trial. ¶ 45. In an amendment to the Pre-Trial Order, approved by the Court on the day of trial, Parker stated: "Defendant objects to any such amendment or supplement on any basis, including based on evidence present at trial, except consents to the amendment of or supplement to the pleadings to include the November 4, 2014 inspection demand." The amendment purported to alter only one paragraph in the Pre-Trial Order.

making an inspection demand protects the right of the corporation to receive and consider a demand in *proper form before litigation is initiated.*"[35] Parker's right to consider Fuchs's demand properly would be substantially impaired by forcing it to adapt its response and defense to Fuchs's evolving requests.[36] The scope of

---

In paragraph 44.H. of the Pre-Trial Order, Parker characterized one of the issues to be litigated as: "Whether [Fuchs's] purported supplemental demand letter sent only eight days before trial . . . and sent only two days before Defendant's answering pre-trial brief was due, supports denying [Fuchs's] inspection requests as further evidence of the undue burden placed on Defendant by [Fuchs]." At trial, Parker argued that Fuchs's shifting document requests were burdensome and that the Special Committee's work had been public knowledge well before Fuchs's November 4, 2014, letter. Thus, although Parker consented to the admission of that letter into the pleadings, it did not waive its argument that Fuchs's expansion of its requests shortly before trial was inappropriate.

[35] *Barnes*, 2013 WL 3480270, at *2 (emphasis in original) (quoting *Cent. Laborers Pension Fund*, 45 A.3d at 146). Even beyond concerns related to Section 220's requirements, forcing Parker to defend against issues raised only a week before trial would be at odds with fundamental fairness.

[36] Fuchs suggests that it requested the board or Special Committee report late because it only recently became aware of its existence. Given the circumstances here, the Court is not moved to employ any discretion it might have to allow Fuchs's late addition. That the Special Committee was evaluating the Stockholder Demand has been public knowledge since 2010. JX 8. That the committee had engaged counsel, evaluated the demand, and recommended that Parker not pursue the action contemplated by the Stockholder Demand has been public knowledge since 2013. JX 51.

Fuchs could have sought documents related to that process when it initiated this action. Parker, which has not been properly afforded time to consider this belated request, has indicated that production of a special committee report would raise issues of privilege. Whether a request for that report would have been appropriate had Fuchs initially sought it through this action cannot now be determined.

Fuchs's demands also include what it describes as a "catch all," including "all information referred to in this letter that is within the legal possession, custody or control of Parker, including, but not limited to, such information that is within the possession, custody or control of Parker's subsidiaries and outside legal counsel,

Fuchs's demand is thus limited to documents sufficient to identify Executives A and B, Law Firm, and Outside Legal Counsel.

## C. *Collateral Estoppel Bars Further Derivative Litigation*

"[I]nvestigating the possibility of pursuing a derivative action based on perceived wrongdoing by a corporation's officers or directors represents a proper purpose for a Section 220 demand."[37] However, if claim or issue preclusion would bar future derivative action, a Section 220 demand may be denied as a matter of law.[38] Here, the Texas federal court has already dismissed with prejudice the Freuler Action for failure to plead demand futility. That judgment prevents Fuchs from relitigating that issue.

This Court must "give a federal judgment the same force and effect as it would be given under the preclusion rules of the state in which the federal court is sitting."[39] In this case, Texas law controls. A party asserting "collateral estoppel must establish that (1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the

---

accountants and consultants." JX 52, at 6; JX 72, at 5. Fuchs represents that this "catch all" was intended to avoid a hyper-technical reading of its inspection demand. The language does not appear to request any category of documents independently. Anyway, such a request lacks the requisite "rifled precision" to support the demand.

[37] *Norfolk Cnty. Ret. Sys.*, 2009 WL 353746, at *6.

[38] *Id.*

[39] *Pyott v. La. Mun. Police Empls.' Ret. Sys.*, 74 A.3d 612, 616 (Del. 2013).

judgment in the first action; and (3) the parties were cast as adversaries in the first action."[40]

Strict mutuality of parties is not required; "[t]o satisfy the requirements of due process, it is only necessary that the party *against whom* the doctrine is asserted was a party or in privity with a party in the first action."[41] Further, "the unique nature of derivative litigation logically leads to a finding of privity between all shareholder plaintiffs."[42] Therefore, Fuchs is in privity with the Freuler Action Plaintiff.[43]

Fuchs argues that the facts and legal theories underlying its case, including the allegations supporting demand futility, differ from those considered in the Freuler Action. However, the Freuler Action Plaintiff and Fuchs alleged breaches of fiduciary duties against Parker's directors and officers based on the same underlying operative facts, *i.e.*, Parker's FCPA-related issues. That the two

---

[40] *John G. & Marie Stella Kenedy Mem'l Found. v. Dewhurst*, 90 S.W.3d 268, 288 (Tex. 2002).

[41] *Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 802 (Tex. 1994) (emphasis in original).

[42] *Hanson v. Odyssey Healthcare, Inc.*, 2007 WL 5186795, at *5 (N.D. Tex. Sept. 21, 2007) (applying Texas law).

[43] Fuchs argues that Parker has failed to prove that the Freuler Action Plaintiff was a Parker stockholder while maintaining the Freuler Action. However, it is clear that the Freuler Action was litigated on the basis that the plaintiff was a stockholder. The Freuler Action Plaintiff verified his status as a stockholder in his first amended complaint. JX 23. His lawyer filed the verification to the second amended complaint because the plaintiff was unavailable. JX 28. The record appears clear that Parker would establish that the Freuler Action Plaintiff was indeed a Parker stockholder when he pursued litigation in Texas.

13

plaintiffs may have offered somewhat different theories for demand futility does not deprive the Freuler Action of preclusive effect. "[T]he doctrine [of collateral estoppel] will not be set aside for failure of a representative to invoke all possible legal theories or to develop all possible resources of proof, but rather only in light of representation so grossly deficient as to be apparent to the opposing party."[44]

Despite Fuchs's rhetoric, its legal theory appears similar to that advanced in the Freuler Action. In Fuchs's own words: "Plaintiff here alleged liability based on the directors' personal failure to cause Parker Drilling to adopt books and records and other policies necessary for compliance with the FCPA despite a known legal duty to do so . . . ."[45] The Texas federal court characterized one of the Freuler Action Plaintiff's claims as: "[Parker's officers and directors] failed to establish and maintain internal controls to ensure compliance with the FCPA, federal securities laws, and accounting regulations . . . ."[46] While the two plaintiffs' theories need not be identical for collateral estoppel to apply, they are at least similar.

---

[44] *Hanson*, 2007 WL 5186795, at *5.

[45] Pl.'s Pre-Trial Answering Br. 17.

[46] First Federal Court Dismissal. In dismissing with prejudice the Freuler Action following repleading, the Texas federal court noted: "Because the Court finds that Plaintiff's response reiterates his same, insufficient, conclusory or erroneous allegations, the Court does not summarize them." Second Federal Court Dismissal.

14

Fuchs's only truly plausible argument against collateral estoppel is that the Texas federal court dismissed the Freuler Action with prejudice before Parker publicly admitted to the Nigerian Bribing Scheme and disclosed the scheme's underlying facts in the Resolution Papers. Parker notes that it entered into the Settlement prior to oral argument in the Fifth Circuit Court of Appeals, which affirmed the dismissal with prejudice. The Freuler Action Plaintiff could have filed a motion for reconsideration before the Texas federal court.[47] The decision not to pursue that strategy was not "grossly deficient," and is a tactical choice binding on Fuchs.

More fundamentally, the existence of the Settlement and Resolution Papers would not have materially affected the Texas federal court's decision on demand futility. In dismissing the Freuler Action, that court noted:

> Once again, Plaintiff offers a variety of irrelevant facts and unsupported conclusions and again he strings together improper inferences, all based on the one fact he has: the on-going FCPA investigation of Parker Drilling. From this one fact, Plaintiff links together the following presumptions: because there is an investigation, there must have been violations of the law; because the law must have been violated, there must have been deficiencies in the internal controls; because there must have been internal control deficiencies, a majority of the defendants must have known of the deficiencies and deliberately chosen to do nothing about them.[48]

---

[47] *See* FED. R. CIV. P. 60(b) ("[T]he court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . newly discovered evidence . . . or any other reason that justifies relief.").
[48] JX 19, at 3-4.

The Settlement would have closed the first inferential gap in the failed chain of reasoning, *i.e.*, the Texas federal court could have concluded that there had been legal violations. However, the Settlement would not have allowed the court to infer that "a majority of the defendants must have known of the deficiencies and deliberately chosen to do nothing about them." The Settlement and related disclosures represent the only "new facts" that Fuchs contends would be relevant in pleading demand futility. These facts alone cannot support every inferential step that the Texas federal court indicated would have been necessary to hold that demand is futile. Therefore, the facts are not material to that decision, and Fuchs is bound by that court's judgment on the issue of demand futility.

The Freuler Action Plaintiff presumably could have made a Section 220 demand before filing either its initial or amended complaint. It did not do so, and its case was dismissed with prejudice. This Court has observed that a prior plaintiff's decision against making a Section 220 demand before pleading demand futility does not prevent collateral estoppel.[49] Here, where Fuchs itself proceeded with the same strategy in the State Court Derivative Action, it should not be heard

---

[49] *See Pyott*, 74 A.3d at 618 (noting that there is no irrebutable presumption of inadequate representation when a stockholder files a derivative action without first bringing a books and records action).

16

to complain that such a decision alone rendered the Freuler Action Plaintiff an inadequate representative of its interests.[50]

Because Fuchs cannot pursue further derivative litigation in this context, pursuit of such action is not a proper purpose.[51]

D. *The Information Fuchs Seeks is Not Necessary to Make a Demand on Parker's Board*

As an initial observation, it is worth noting that Parker's board has already done much of what one might expect in relation to its past FCPA violations. The Settlement commended Parker for its response to the FCPA investigations,

---

[50] To the extent that Fuchs argues that Parker's current directors (a majority of whom joined the board after the last events described in the Resolution Papers) breached duties based on their response to the conduct underlying the Settlement, there is no credible basis to support an inference of wrongdoing. As discussed, *infra* Section II.D, Parker's board seemingly dealt with the problem in good faith.

> Stockholders cannot satisfy [the credible basis] burden merely by expressing disagreement with a business decision. When a business judgment forms the basis for a request for books and records, a stockholder must show a credible basis for an inference that management suffered from some self-interest or failed to exercise due care in a particular decision.

*Deephaven Risk Arb Trading Ltd. v. UnitedGlobalCom, Inc.*, 2004 WL 1945546, at *5 (Del. Ch. Aug. 30, 2004). Fuchs's only criticism of the current board is that it did not adequately pursue action against those responsible for the Nigerian Bribing Scheme. That (i) there was wrongdoing and (ii) Fuchs perceives the board's response as inadequate does not establish a credible basis to infer wrongdoing by the board. A holding otherwise would conflate the actions of different actors and eviscerate the credible basis requirement. Further, Parker has ended its business relationships with Executives A and B; there is no credible basis for investigating Parker's current officers.

[51] Because collateral estoppel applies, Parker's argument that potential derivative litigation would be time barred will not be considered.

including (i) its cooperation, including its extensive internal investigation, (ii) its extensive remediation, including terminating business relationships with officers, employees, and agents primarily responsible for the bribery scheme, (iii) its improvement of, and continuing commitment to improve, its internal controls, and (iv) its continuing cooperation with the DOJ in future investigations.[52] Parker's board also formed the Special Committee that considered the Stockholder Demand and apparently pursued action against Outside Legal Counsel.[53]

Parker's range of effort appears reasonable, but it cannot be characterized as exhaustive. A board's apparent good faith effort to deal with a problem does not deprive a stockholder of its inspection rights; ultimately, this is Parker's primary defense. Fuchs has referenced making a demand on Parker's board, and has thus stated a proper purpose.

However, "[e]ven if a plaintiff demonstrates a proper purpose, that plaintiff is not entitled to inspect all the documents that he or she believes are relevant or even likely to lead to information relevant to that purpose."[54] "The scope of inspection . . . [is] limited to those documents that are necessary, essential and

---

[52] JX 41, at ¶ 4.

[53] Aff. of John Edward Menger, ¶ 3. Although Fuchs objected to this affidavit because it did not have the opportunity to examine the affiant, whether it is admitted or not is not material to this decision.

[54] *Norfolk Cnty. Ret. Sys.*, 2009 WL 353746, at *6.

sufficient to the stockholder's purpose."[55] A requesting stockholder bears the burden of proving that the books and records sought are essential to accomplish its purpose.[56]

This is not a case where Fuchs's demand could be dismissed as vague or overly broad. However, while its requests are specific and limited, Fuchs does not need the identities (already known to the board) of Executives A and B, Outside Legal Counsel, and the Law Firm in order to make a demand on the board. Through the Resolution Papers, Fuchs knows details about the Nigerian Bribing Scheme, as well as the steps Parker has taken to remediate those issues. Fuchs can request that Parker's board take further action against the wrongdoers without itself knowing their identities.[57] Fuchs already has sufficient information to pursue this course of action; the production it seeks is not necessary and essential.

---

[55] *Id.* (quoting *Marathon P'rs, L.P. v. M&F Worldwide Corp.*, 2004 WL 1728604, at *4 (Del. Ch. July 30, 2004)).

[56] *Sec. First Corp. v. U.S. Die Casting & Dev. Co.*, 687 A.2d 563, 569 (Del. 1997).

[57] *Cf. Kaufman v. CA, Inc.*, 905 A.2d 749, 753 (Del. Ch. 2006) ("[W]hen a books and records action is brought with the goal of evaluating a possible derivative suit, the books and records that satisfy the action are those that are required to prepare a well-pleaded complaint. Of course, this means that Section 220 is not meant as a replacement for discovery under Rule 34."). While the information Fuchs seeks would be necessary to pursue derivative litigation, it is not necessary to make demand on Parker's board.

## III. CONCLUSION

Given the circumstances of this case, Fuchs has failed to establish that it is entitled to the books and records it seeks under 8 *Del. C.* § 220.  It is barred from pursuing further derivative litigation and the documents it seeks are unnecessary to make a demand on Parker's board.  Given that those are the two purposes that Fuchs has articulated, judgment will be entered in favor of Parker.