# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| BEATRICE CORWIN LIVING IRREVOCABLE TRUST, | ) ) ) | |
| | ) | C. A. No. 10425-JL |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| PFIZER, INC., | ) ) | |
| Defendant. | ) ) | |

Submitted: May 19, 2016
Decided: August 31, 2016
Corrected: September 1, 2016

## <u>MEMORANDUM OPINION</u>

Robert D. Goldberg, Esquire, BIGGS & BATTAGLIA, Wilmington, Delaware, and John F. Keating, Jr., Esquire, THE BRUALDI LAW FIRM, P.C., New York, New York; *Attorneys for Beatrice Corwin Living Irrevocable Trust*.

Paul J. Lockwood, Esquire and Lauren N. Rosenello, Esquire, SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP, Wilmington, Delaware; Jay B. Kasner, Esquire, SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP, New York, New York; *Attorneys for Pfizer, Inc*.

**LeGROW, Judge[1]**

---

[1] Sitting as a Vice Chancellor by designation under Del. Const. art. IV, § 13(2).

The trustees of a trust seek to inspect books and records of a public company for the purpose of valuing the trust's shares and investigating possible mismanagement. The plaintiffs believe the company violated accounting and disclosure laws by failing to calculate and disclose a particular deferred tax liability. The only use the plaintiffs identified for their intended investigation of possible mismanagement was to evaluate potential litigation against the board for failing to assure the company's compliance with applicable accounting rules.

The evidence the plaintiffs presented at trial focused on whether the company could, and therefore was required to, calculate the tax liability. None of the evidence or the arguments, however, addressed the board's compliance with its oversight duties under *In re Caremark International Inc. Derivative Litigation*.[2] Because I conclude the plaintiffs have shown no credible basis to infer mismanagement or wrongdoing by the board, I deny the inspection. The plaintiffs' effort to avoid that conclusion by attempting to expand the scope of their purpose after trial comes too late. I further conclude the plaintiffs have not shown that the information they seek is necessary to value the trust's shares. The relief sought in the complaint therefore is denied.

---

[2] 698 A.2d 967 (Del. Ch. 1996).

## Factual Background

The plaintiffs in this action, Robert Corwin ("Dr. Corwin") and Marilyn Corwin, are the trustees of the Beatrice Corwin Living Irrevocable Trust (the "Trust").[3] The Trust owns 500 shares of Defendant Pfizer, Inc. ("Pfizer"), which is a pharmaceutical company incorporated in Delaware and headquartered in New York. Pfizer is a multi-national corporation with worldwide operations. In 2013, which is the time period at issue in the demand, Pfizer's board was comprised of 12 directors, 11 of whom were independent, outside directors.

This inspection action arose from an article Dr. Corwin read in The New York Times titled "When Taxes and Profits Are Oceans Apart."[4] The article identified a trend among large public companies who amass substantial earnings outside the United States. Under United States tax laws, foreign earnings that are "indefinitely reinvested" overseas are not taxed unless and until the accumulated earnings are repatriated to the United States (the "Repatriation Tax"). Under Accounting Standards Codification 740-30 ("ASC 740"), which is a subset of United States generally accepted accounting principles ("GAAP"), a company must report the Repatriation Tax liability it is deferring by indefinitely reinvesting the earnings overseas *unless* the company states that calculating the Repatriation

---

[3] The demand was made, and this action was filed, in the name of the Trust. Acknowledging the language in Court of Chancery Rule 17(a) requiring that every action shall be prosecuted in the name of the real party in interest, including the trustee of an express trust, the trustees filed a ratification of the action. To eliminate confusion, I refer to the trustees as the plaintiffs.

[4] JX 4.

2

Tax liability would be "not practicable."[5]   Specifically, ASC 740 pertinently provides:

> All of the following information shall be disclosed whenever a **deferred tax liability** is not recognized because of the exceptions to comprehensive recognition of deferred taxes related to subsidiaries and corporate joint ventures: . . . (c) [t]he amount of the unrecognized deferred tax liability for temporary differences related to investments in foreign subsidiaries and foreign corporate joint ventures that are essentially permanent in duration if determination of that liability is practicable or a statement that determination is not practicable.[6]

The New York Times article identified Pfizer as one of the large public companies that does not calculate its deferred Repatriation Tax liability on the basis that the calculation is "not practicable."  Pfizer's 2013 annual report states the company has made no tax provision for "approximately $69.0 billion of unremitted earnings of our international subsidiaries.  As these earnings are intended to be indefinitely reinvested overseas, the determination of a hypothetical unrecognized deferred tax liability as of December 31, 2013, is not practicable."[7] The 2013 annual report also indicates that Pfizer's audit committee reviews the company's financial statements on behalf of Pfizer's board, including meeting with management and the company's outside accounting firm, KPMG LLP ("KPMG").[8] KPMG opined to the audit committee and the board that, in KPMG's opinion,

---

[5] ASC 740-30-50-2 (*see* JX 19 at 9).
[6] *Id.*
[7] JX 31 at 183 (page 79 of Pfizer's 2013 10-K).
[8] *Id.* at 155 (page 52 of Pfizer's 2013 10-K).

3

Pfizer's 2013 financial statements were "free of material misstatement" and were in conformity with GAAP.[9]

After reading The New York Times article, Dr. Corwin sent a demand to each of the four public companies identified in the article as companies that classified calculating their deferred Repatriation Tax liability as "not practicable."[10] Those companies were Pfizer, Merck & Co., International Business Machines Corporation ("IBM"), and General Electric Co. ("G.E.").[11] The demand Dr. Corwin sent to Pfizer on behalf of the Trust (the "Demand") identified the following purposes for the inspection:

> (i) evaluating potential derivative or shareholder litigation, including investigating possible breaches of fiduciary duties by Pfizer's board of directors (the "Board") for failing to assure compliance with applicable accounting rules[,] and (ii) valuing the [Trust's] shares.[12]

The Demand sought board-level documents, namely minutes of the Pfizer board or its committees discussing: the Repatriation Tax, calculation of the tax and disclosure requirements, The New York Times article, and related topics, as well as financial models that track or calculate Pfizer's foreign earnings and the costs to repatriate foreign earnings.[13]

---

[9] *Id*. at 156 (page 53 of Pfizer's 2013 10-K).
[10] Dep. of Robert Corwin (hereinafter cited as "Corwin Dep.") at 25-26.
[11] The New York Supreme Court dismissed the plaintiffs' inspection complaint against G.E. for failure to state a claim. *Beatrice Corwin Living Irrevocable Trust v. Gen. Elec. Co.*, Index No. 653989/2014 (N.Y.S. Sept. 16, 2015). The plaintiffs have appealed that ruling.
[12] JX 1 at 1.
[13] *Id*. at 2-3.

4

Pfizer refused to permit Dr. Corwin to inspect any of the books and records he sought. The company took the position, which it maintains in this litigation, that the Demand failed to articulate a credible basis from which possible mismanagement or wrongdoing by Pfizer's board could be inferred. Pfizer's response to the Demand further stated that the valuation purpose articulated in the Demand was not proper because Pfizer's public filings contained sufficient information from which to value the Trust's shares and because, in any event, none of the books and records requested in the Demand related to the valuation purpose.

The plaintiffs thereafter filed this action to enforce their inspection rights under 8 *Del. C.* § 220. In the complaint, the plaintiffs allege they have reasonable grounds to believe that the Board "and others" at Pfizer breached their fiduciary duties by failing to comply with applicable accounting standards.[14] The complaint did not identify, by position or name, the "others" who might have engaged in mismanagement.

At trial, the plaintiffs offered the testimony of Casey M. Schwab, Ph.D. ("Dr. Schwab"), who is an assistant professor in the University of Georgia's J.M. Tull School of Accounting.[15] Dr. Schwab was qualified as an expert to testify regarding financial statement reporting of tax information under ASC 740.[16] Dr.

---

[14] Verified Compl. ¶ 2.

[15] *Beatrice Corwin Living Irrevocable Trust v. Pfizer, Inc.*, C.A. No. 10425-ML, at 7 (Del. Ch. Nov. 23, 2015) (TRANSCRIPT) (hereinafter cited as "Tr.").

[16] *Id.* at 13.

5

Schwab testified that it would be "practicable" for Pfizer to calculate its deferred Repatriation Tax liability,[17] pointing to other tax calculations that Pfizer annually performs, which Dr. Schwab opined required "essentially the same calculation" ASC 740 requires.[18]

Dr. Schwab opined that the meaning of "not practicable" in ASC 740 is not the same as Pfizer's explanation that it does not perform the calculation because it is "hypothetical" and "complex." Dr. Schwab dismissed as irrelevant Pfizer's explanation that it has no plans to repatriate the foreign earnings and that the calculation is dependent on unknown variables such as the tax laws and tax rates of other countries, withholding taxes, exemptions, and the manner of repatriation, all of which vary depending on when and how earnings are repatriated.[19] As to the hypothetical nature of the calculation, Dr. Schwab testified that ASC 740 assumes the foreign earnings are reinvested indefinitely and that the company has no plans to repatriate them, but the standard nevertheless requires calculation and disclosure.[20] Although he acknowledged the calculation's complexity, Dr. Schwab testified that Pfizer and its advisors have the expertise to make the calculation and in fact perform similarly complex calculations on a regular basis.[21]

---

[17] *Id*. at 20-21.
[18] *Id*. at 25-26, 31-32, 35.
[19] *Id*. at 21-22, 30, 36, 38; JX 70 at 19-20.
[20] Tr. 21-22, 38.
[21] *Id*. at 22.

Dr. Schwab also acknowledged, however, that ASC 740 does not define the word "practicable" and that interpreting the word requires applying an accountant's professional judgment and weighing the incremental costs and benefits of making the calculation.[22] He conceded the correctness of the factors Pfizer considered in weighing whether the calculation was practicable.[23] Dr. Schwab specifically acknowledged he could not disagree with the audit opinion offered by KPMG that Pfizer's 2013 financial statements were consistent with GAAP.[24] Dr. Schwab also conceded he was not offering an opinion regarding the propriety of the decision made by Pfizer's audit committee and its board to approve Pfizer's financial disclosures.[25]

## ANALYSIS

Section 220 of the Delaware General Corporation Law allows a stockholder to inspect a corporation's books and records, provided the stockholder's inspection demand meets the form and manner requirements contained in the statute and the inspection is demanded for a proper purpose.[26] Pfizer does not dispute that Dr. Corwin complied with the form and manner requirements of Section 220, nor does Pfizer argue that the scope of the books and records sought in the Demand is too

---

[22] *Id*. at 112-13, 119-20.
[23] *Id*. at 114, 121-22.
[24] *Id*. at 137.
[25] *Id*. at 137-38.
[26] 8 *Del. C.* § 220(c); *La. Mun. Police Emps. Ret. Sys. v. Countrywide Fin. Corp.*, 2007 WL 2896540, at *9 (Del. Ch. Oct. 2, 2007); *Highland Select Equity Fund, L.P. v. Motient Corp.*, 906 A.2d 156, 164 (Del. Ch. 2006).

7

broad. Rather, the issue in this case solely is whether the plaintiffs have demonstrated a proper purpose for the inspection. A proper purpose is one "reasonably related to such person's interest as a stockholder."[27]

The plaintiffs argue they have stated two purposes – investigating mismanagement and valuing shares – long recognized in Delaware as proper purposes for inspecting books and records. Pfizer, on the other hand, contends the plaintiffs have neither (i) established that they have a credible basis to investigate mismanagement or wrongdoing, nor (ii) shown that the unknown variable of Pfizer's deferred liability for the Reparation Tax would affect the company's value. Pfizer alternatively argues the plaintiffs' stated purposes are not their true purposes.

### A. The plaintiffs have not demonstrated a credible basis to investigate mismanagement for purposes of evaluating possible litigation.

Trial in this matter focused almost exclusively on whether Pfizer's 2013 annual report was incorrect or misleading to the extent it stated that calculating Pfizer's deferred Reparation Tax liability was not practicable. Dr. Schwab offered his opinion that the calculation was practicable based on other calculations Pfizer routinely makes in its financial statements. Pfizer disputed the validity of Dr. Schwab's conclusions. In my view, the issue is far more simple; even if the plaintiffs established that the calculation was practicable, they have not offered a

---

[27] 8 *Del. C.* § 220(b).

credible basis from which the Court may infer that Pfizer's board, which relied on KPMG's opinion, engaged in any mismanagement or wrongdoing in approving Pfizer's financial disclosures or in assuring the company's compliance with accounting standards.

This Court routinely has acknowledged that investigating corporate waste, mismanagement, or wrongdoing is a proper purpose for which to demand inspection of books and records.[28] Mere suspicion, however, or a subjective belief of wrongdoing, without more, is not sufficient to state a proper purpose.[29] Rather, a stockholder whose stated purpose is investigating mismanagement must provide "some evidence" to suggest a "credible basis" from which this Court may infer possible mismanagement, waste, or wrongdoing may have occurred.[30]

This credible basis standard has been described as the "lowest possible burden of proof" under Delaware law.[31] The standard falls far short of requiring a stockholder to prove by a preponderance of the evidence that mismanagement or wrongdoing actually has occurred.[32] The burden, however, is not insubstantial, and although members of both the Delaware Supreme Court and this Court have encouraged stockholders to use the "tools at hand" by making books and records

---

[28] *Sec. First Corp. v. U.S. Die Casting & Dev. Co.*, 687 A.2d 563, 567 (Del. 1997); *Dobler v. Montgomery Cellular Hldg. Co.*, 2001 WL 1334182, at *3 (Del. Ch. Oct. 19, 2001).
[29] *City of Westland Police & Fire Ret. Sys. v. Axcelis Techs., Inc.,* 1 A.3d 281, 287 (Del. 2010); *Marathon P'rs, L.P. v. M&F Worldwide Corp.*, 2004 WL 1728604, at *5 (July 30, 2004).
[30] *Seinfeld v. Verizon Commc'ns, Inc.*, 909 A.2d 117, 118 (Del. 2006).
[31] *Countrywide Fin. Corp.*, 2007 WL 2896540, at *10.
[32] *Id.*; *Axcelis Techs., Inc.*, 1 A.3d at 287.

demands before instituting derivative litigation, that recommendation does not alter the requirement that a stockholder present some evidence from which the Court may infer possible mismanagement or wrongdoing.[33] The credible basis standard is designed to strike a balance between granting stockholders access to corporate records and protecting corporations and their stockholders from wasteful fishing expeditions based on mere curiosity.[34]

The only use the plaintiffs identified in the Demand for the inspection was to evaluate potential litigation. The only mismanagement or wrongdoing to which the plaintiffs pointed was "possible breaches of fiduciary duties by Pfizer's board of directors (the "Board") for failing to assure compliance with applicable accounting rules."[35] The Demand did not reference any other mismanagement or wrongdoing, whether by Pfizer's directors, management, or advisors. The plaintiffs' focus on board-level decisions further was confirmed by the scope of the inspection demanded, which sought board-level books and records.

Despite specifying in their Demand an intent to investigate board conduct, none of the evidence the plaintiffs offered to support the credible basis standard was focused on the board's conduct, or lack thereof. That is, the plaintiffs' Demand indicated an intent to investigate whether the board failed to assure Pfizer's compliance with accounting rules. Such a claim, referred to as a

---

[33] *Marathon P'rs, L.P.*, 2004 WL 1728604, at *4.
[34] *Seinfeld*, 909 A.2d at 118.
[35] JX 1 at 1.

*Caremark* claim, is premised on the idea that the board failed to act in good faith in discharging its duties to oversee the company's management.[36] The Delaware Supreme Court has explained that a plaintiff seeking to establish a *Caremark* claim, which is a subset of the duty of loyalty, must establish "a sustained and systematic failure of the board to exercise oversight – such as an utter failure to attempt to assure a reasonable information and reporting system exists."[37] To prove a *Caremark* claim, a plaintiff must establish that the board failed to implement a reporting system or failed to respond to "red flags" raised by that system.[38]

Of course, a stockholder seeking inspection under Section 220 need not prove a *Caremark* claim, or even plead a claim that would survive a motion to dismiss a plenary action that asserted a *Caremark* claim. A stockholder must, however, provide some evidence from which a *Caremark* claim could be inferred. That is, where a stockholder's sole purpose for investigating mismanagement is to determine whether the board breached its duty of oversight, it is not enough to provide a credible basis from which the Court may infer that management or lower-level employees engaged in wrongdoing. The stockholder also must provide some evidence from which the Court may infer that the board utterly failed to implement a reporting system or ignored red flags.

---

[36] *Stone v. Ritter*, 911 A.2d 367-68 (Del. 2006).
[37] *Id*. at 369 (quoting *Caremark*, 698 A.2d at 971).
[38] *Stone*, 911 A.2d at 370-71.

The plaintiffs' evidence at trial and arguments in their briefs did not address Pfizer's reporting system, or lack thereof, or whether any "red flags" might have been raised but ignored by Pfizer's board. Nor is there anything in the record from which the Court might infer the absence of such a reporting system or the presence of such red flags.[39] The plaintiffs sought to prove at trial that Pfizer's statement that the Reparation Tax calculation is not practicable may not be accurate and therefore is a "positive violation" of the law. It is debatable whether the plaintiffs' evidence at trial satisfied the minimum quantum of evidence necessary to establish a credible basis that Pfizer's practicability statement is inaccurate. The gap the plaintiffs failed to bridge is providing any evidence permitting even an inference that the board was aware, or should have been aware, of this inaccuracy.

In addition to failing to establish a credible basis from which the Court could infer the Pfizer directors breached their duty of oversight, the plaintiffs also failed to address the board's reliance on KPMG's audit opinion. The only evidence admitted at trial showed that the Audit Committee met with management and KPMG to review the company's financial statements and that KPMG provided an unqualified opinion to the board that Pfizer's financial statements were prepared in accordance with GAAP. Under 8 *Del. C.* § 141(e), directors are "fully protected"

---

[39] *See, e.g. Okla. Firefighters Pension & Retirement Sys. v. Citigroup, Inc.*, 2015 WL 1884453, at*5-6 (Del. Ch. Apr. 24, 2015) (concluding that it would be inappropriate to infer mismanagement merely because wrongdoing occurred within the company, but finding that the stockholders had stated a credible basis by showing evidence that red flags were raised but ignored).

in relying in good faith on the expert's opinions as to matters the director reasonably believes are within the expert's competence, provided the expert was selected with reasonable care by or on behalf of the corporation. The board's reliance on KPMG's opinion that Pfizer's financial statements were prepared in accordance with GAAP protects the board from the claims the plaintiffs seek to investigate through the Demand. The plaintiffs have not argued, and there is no evidence in the record from which the Court could infer, that the board did not rely on KPMG, that the board did not believe the opinion to be within KPMG's field of expertise, or that KPMG was not selected with reasonable care.[40] Indeed, Dr. Schwab could not even opine that KPMG's opinion was wrong, let alone that the Pfizer board was not justified in relying on it.

Pfizer's reliance on Section 141(e) is consistent with *SEPTA v. Abbvie, Inc.*,[41] a decision in which this Court held that a stockholder did not have a credible basis to investigate mismanagement or wrongdoing where (i) the only use identified by the stockholder for the inspection was to help plead a later claim in litigation, (ii) the only available relief the stockholder identified was monetary damages,[42] and (iii) the directors who were the potential subject of the suit were

---

[40] *See Brehm v. Eisner*, 746 A.2d 244, 262 (Del. 2000) (discussing the facts that would rebut a board's apparent reliance on an expert under 8 *Del. C.* § 141(e)).

[41] 2015 WL 1753303, at *13 (Del. Ch. Apr. 15, 2015).

[42] Unlike Section 102(b)(7), the protection offered by Section 141(e) is not limited to liability for monetary damages. Accordingly, this particular element of the *Abbvie* analysis is not material here.

13

protected by an exculpatory charter provision under 8 *Del. C.* § 102(b)(7). The Delaware Supreme Court later affirmed the reasoning and conclusion reached by the *Abbvie* Court.[43]

The reasoning in *Abbvie* applies equally here. That is, where a stockholder seeks to investigate mismanagement or wrongdoing solely for potential litigation, the evidence the stockholder presents to establish a credible basis must be evidence of "actionable corporate wrongdoing."[44] As the *Abbvie* Court pointed out, other decisions of this Court have concluded that a stockholder does not have a credible basis to investigate mismanagement or wrongdoing if the litigation the stockholder is evaluating would be barred by claim or issue preclusion, lack of standing, or the statute of limitations.[45] So too, where a stockholder's sole basis is litigation-driven and the claim he seeks to investigate is not justiciable due to a statutory defense, there is no valid purpose for the inspection.

Although the plaintiffs argue otherwise, this Court's decision in *Amalgamated Bank v. Yahoo!, Inc.*[46] neither narrowed nor departed from the reasoning in *Abbvie*. In *Yahoo!*, the Court held that stockholders were entitled to

---

[43] *SEPTA v. Abbvie, Inc.*, 132 A.3d 1 (Del. 2016) (TABLE).
[44] *Abbvie*, 2015 WL 1753033, at *13.
[45] *Id.* at *13 & n. 104-106 (citing *Norfolk Cnty. Ret. Sys. v. Jos A. Bank Clothiers, Inc.*, 2009 WL 353746, at *6 (Del. Ch. Feb. 12, 2009); *Fuchs Family Trust v. Parker Drilling Co.*, 2015 WL 1036106, at *5–7 (Del. Ch. Mar. 4, 2015); *Graulich v. Dell Inc.*, 2011 WL 1843813, at *5 (Del. Ch. May 16, 2011); *West Coast Mgmt. & Capital, LLC v. Carrier Access Corp.*, 914 A.2d 636, 641 (Del. Ch. 2006); *Polygon Glob. Opportunities Master Fund v. West Corp.*, 2006 WL 2947486, at *5 (Del. Ch. Oct. 12, 2006) (internal citations omitted)).
[46] 132 A.3d 752 (Del. Ch. 2016).

14

inspect books and records to investigate possible mismanagement and wrongdoing by the Yahoo! board and management. The *Yahoo!* Court distinguished *Abbvie* on its facts because (1) the stockholder's purpose for investigating mismanagement was not limited to evaluating potential litigation, (2) the focus of the investigation included members of management, to whom Section 102(b)(7) (or Section 141(e)) would not apply, and (3) the stockholder provided some evidence from which the Court could infer non-exculpated breaches of fiduciary duty.[47]

Because the plaintiffs' sole focus in the Demand was to investigate "possible breaches of fiduciary duties by Pfizer's board of directors (the "Board") for failing to assure compliance with applicable accounting rules" for the purpose of "evaluating potential shareholder or derivative litigation," the plaintiffs' credible basis argument falters for want of any quantum of evidence of an identifiable breach of fiduciary duty by the board and for the absence of any evidence upon which the plaintiffs could rely to overcome the presumptions of 8 *Del. C.* § 141(e). Perhaps recognizing that they cannot establish a credible basis within the narrow focus articulated in the Demand, the plaintiffs over the course of this litigation incrementally attempted to expand and shift their investigative focus beyond the board and beyond evaluating potential litigation.

---

[47] *Id*. at 786-87.

That shift, however, was not clearly made until after trial. The complaint obliquely referred to wrongdoing by the board "and others," without expanding in any way as to who those "others" might be or what additional mismanagement or wrongdoing might have occurred. In their pre-trial brief, plaintiffs referred to evidence that the "board *and management* did not prepare Pfizer's financial statements" in accordance with GAAP, but the plaintiffs nevertheless confirmed that "chief" among their purposes was "investigating mismanagement by Pfizer's board.[48] The plaintiffs' pre-trial brief similarly confirmed that the Demand sought a limited number of documents from Pfizer's board members, which "will enable the Trust to determine whether in fact the directors breached their fiduciary duties."[49] In their opening post-trial brief, the plaintiffs argued Section 141(e) should not bar investigation because that Section does not apply to claims against management, but did not explain further what claims against management they sought to investigate.[50] Finally, in their post-trial reply brief, the plaintiffs for the first time specifically identified their desire to investigate a claim against Pfizer's Chief Financial Officer and stated that, in addition to investigating mismanagement to evaluate possible litigation, the plaintiffs also were considering seeking an

---

[48] Pls.' Pre-Trial Br. 16, 39 (emphasis added).
[49] *Id*. at 39.
[50] Pls.' Opening Post-Tr. Br. 21.

audience with Pfizer's board or preparing a stockholder resolution for the next annual meeting.[51]

The plaintiffs' creeping expansion of their reasons for investigating mismanagement or wrongdoing are inconsistent with Delaware law and unfair to Pfizer. The only fair reading of the Demand is that the plaintiffs' investigation of mismanagement or wrongdoing was for the purpose of evaluating possible shareholder or derivative litigation regarding breaches of fiduciary duty by Pfizer's board of directors. That is the demand to which Pfizer was asked to respond, both before and during this litigation. It would be both inequitable and inconsistent with precedent interpreting Section 220 to permit a stockholder to make a demand, file an action under Section 220, and then offer post-trial a purpose that never previously was identified.[52]

This Court has declined to read into a demand possible purposes for the inspection other than those specifically identified in the demand, unless the surrounding circumstances permit a more expansive reading.[53] That result is consistent with the instruction of the Delaware Supreme Court that requiring strict

---

[51] Pls.' Reply Post-Tr. Br. 11-12.
[52] *See, e.g. Abbvie*, 2015 WL 1753033, at *11 (holding a stockholder must "state a reason for the purpose, *i.e.*, what it will do with the information or an end to which that investigation will lead"); *West Coast Mgmt. & Capital, LLC*, 914 A.2d at 646 ("Although investigating wrongdoing is a proper purpose, it must be to some end. Delaware law does not permit [S]ection 220 actions based on an ephemeral purpose, nor will this court impute a purpose absent the plaintiff stating one").
[53] *Fuchs Family Tr.*, 2015 WL 1036106, at *2, n.28; *West Coast Mgmt. & Capital, LLC*, 914 A.2d at 646.

compliance with the statutory requirements of Section 220 strikes the appropriate balance between the right of a stockholder to obtain information and "the rights of directors to manage the business of the corporation without undue interference from stockholders."[54]  Permitting a stockholder to identify particular purposes in the demand, and then to expand or augment those purposes after trial when confronted with the company's defense of the litigation throws those competing interests out of balance and prejudices the company's ability to assess the demand and defend the litigation.  In contrast, requiring specificity in the demand and holding a stockholder to the purposes identified in the demand is not an unfair result, as the stockholder is the master of his demand and readily should be able to identify his purpose in the demand or, at a minimum, before trial.

**B. The plaintiffs have not shown that the information sought is necessary to obtain an accurate value of the Trust's shares.**

The other purpose the plaintiffs identified for seeking inspection was to value the Trust's shares in Pfizer.  A stockholder of a publicly traded company seeking to inspect books and records for the purpose of valuing shares must show why publicly available information is not sufficient to perform the valuation.[55]  Put another way, the stockholder must show "a present need for valuation [and] why

---

[54] *Cent. Laborers Pension Fund v. News Corp.*, 45 A.3d 139, 144 (Del. 2012).
[55] *Polygon Glob. Opportunities Master Fund*, 2006 WL 2947486, at *5; *Marathon P'rs, L.P.*, 2004 WL 1728604, at *8.

inspection of documents beyond what is publicly available is necessary to permit it to satisfy its stated purpose."[56]

Dr. Corwin readily concedes that he is neither an accountant nor a financial advisor and that neither he nor his co-trustee independently value the Trust's holdings beyond looking at the market price of stock.[57] Even if the plaintiffs had the ability to perform such a valuation, or the intent to hire an expert to do so on their behalf, they have not shown that inspecting the requested books and records is necessary to obtain an accurate value of Pfizer's shares. The only evidence the plaintiffs offered regarding the effect of the deferred tax liability on a company's value was a news article discussing G.E.'s decision to sell off the bulk of its G.E. Capital businesses.[58] In connection with that divestiture, G.E. announced that it had decided to repatriate foreign earnings and would incur a sizeable tax bill in association with that repatriation. The article obliquely referred to G.E.'s stock price rising, and later falling, after "Friday's announcement," but it is unclear from the context of the article whether that announcement related to the divestiture or the tax bill.[59]

Even if the Court assumes the fluctuation in G.E.'s stock price was a response to the tax bill, it does not follow that information regarding Pfizer's

---

[56] *Marathon P'rs, LP.,* 2004 WL 1728604, at *8.
[57] Corwin Dep. 38-39.
[58] JX 33.
[59] *Id*. at 3-4.

deferred tax liability under ASC 740 would affect the value of Pfizer's shares. The distinction is subtle but important: the fluctuation in G.E.'s stock price arguably was in response to G.E.'s decision to repatriate earnings and incur the associated tax; what the plaintiffs seek here is information regarding taxes Pfizer is deferring and does not owe, presently or foreseeably. Given the vague nature of the evidence the plaintiffs cite, and the gap between the information that arguably influenced G.E.'s share price and the information the plaintiffs seek, I do not believe they have shown that an accurate valuation depends on inspecting the books and records sought.[60]

## CONCLUSION

Because I have concluded the plaintiffs have not stated a proper purpose to inspect the books and records, I need not reach Pfizer's alternative contention that the stated purposes in the Demand are not the plaintiffs' true purposes.

For the foregoing reasons, the relief the plaintiffs seek is **DENIED**. Pfizer **SHALL** submit a conforming form of order within **FIVE DAYS** of the date of this Opinion.

**IT IS SO ORDERED.**

---

[60] The plaintiffs' contention that the information must be necessary to an accurate valuation because taxes reduce income similarly misses the distinction between a calculation of taxes Pfizer will pay and taxes Pfizer does not owe now.

20