**WEST COAST MANAGEMENT & CAPITAL, LLC, Plaintiff,**

v.

**CARRIER ACCESS CORPORATION, Defendant.**

C.A. No. 2262–N.

Court of Chancery of Delaware, New Castle County.

Submitted: Oct. 20, 2006.
Decided: Nov. 14, 2006.

See also 426 F.Supp.2d 1175.

Joseph A. Rosenthal, Rosenthal, Monhait & Goddess, P.A., Wilmington, DE; William B. Federman, Stuart W. Emmons, Federman & Sherwood, Oklahoma City, OK, for the Plaintiff.

Peter J. Walsh, Jr., Timothy R. Dudderar, Potter, Anderson & Corroon, LLP, Wilmington, DE; Boris Feldman, Douglas J. Clark, Karen T. Stefano, Kelley E. Moohr, Wilson Sonsini Goodrich & Rosati, Palo Alto, CA, for the Defendant.

### OPINION

LAMB, Vice Chancellor.

## I.

A stockholder derivative plaintiff that had judgment entered against it in the United States District Court for the District of Colorado for failure to plead demand futility, but without prejudice to the claims asserted on behalf of the corporation, seeks to inspect the corporation's books and records pursuant to 8 *Del. C.* § 220 to obtain information sufficient to adequately plead demand futility in a proposed second derivative complaint. The court finds the derivative plaintiff is estopped from relitigating demand futility and the Colorado federal court's opinion and order preclude the plaintiff from filing a second derivative complaint. For that reason, the plaintiff does not have a proper purpose in making its section 220 demand. Thus, the complaint will be dismissed.

## II.

### A. *The Parties*

The defendant, Carrier Access Corporation, is a Delaware corporation with its principal place of business in Boulder, Colorado. Carrier designs, manufactures, and sells access equipment to wireline and wireless carriers. The plaintiff, West Coast Management & Capital, LLC, is a limited liability company organized under the laws of the State of Washington. West Coast claims to have been a holder of Carrier stock at all relevant times.

### B. *The Facts*

#### 1. *Alleged Wrongdoing*

Through this section 220 action, West Coast seeks to investigate alleged wrongdoing in connection with Carrier's restatement of its 2003 and 2004 financial statements. Carrier announced that its financials contained material accounting errors and reflected weaknesses in internal financial reporting controls. As a re-

sult of the ensuing restatements, reported revenue for 2003 was reduced by $84,000 and reported revenue for 2004 was reduced by $5,822,000. Reported net income decreased from $2,458,000 to $1,512,000 in 2003 and from $899,000 to a net loss of $1,729,000 in 2004. During the time periods covered by the restatement, Carrier's CEO, Roger L. Koenig, and his wife, Nancy Pierce, who was also a director and the Corporate Development Officer of the company, sold Carrier common stock worth more than $7,000,000. The company's CFO, Timothy R. Anderson, sold stock worth approximately $830,000. As a result of these events, numerous federal securities suits and several derivative complaints were filed.

### 2. The Federal Derivative Suit

On June 17, 2005, West Coast filed a derivative complaint on behalf of Carrier in the United States District Court for the District of Colorado. The case was consolidated with several other derivative actions filed by other plaintiffs. None of those plaintiffs made a section 220 demand on Carrier before filing suit. An amended complaint was filed on September 26, 2005. The defendants moved to dismiss for failure to adequately plead demand futility under Federal Rule of Civil Procedure 23.1. The plaintiffs responded, but also asked the court for leave to replead demand futility in the event the case was dismissed. On March 30, 2006, United States District Judge Phillip S. Figa granted the defendants' motion to dismiss for failure to adequately plead demand futility

and specifically denied the plaintiffs' request for leave to replead.[1] The court entered judgment for the individual defendants and against the named plaintiffs; moreover, the federal court dismissed the underlying claims without prejudice.

### 3. The Federal Securities Case

Numerous securities class actions were also filed against Carrier. They were consolidated into one action, also in the District of Colorado, where a consolidated securities class action complaint was filed on January 17, 2006. The defendants moved to dismiss the complaint, but the court found that the plaintiffs had alleged sufficient facts to plead scienter under the Private Securities Litigation Reform Act of 1995[2] and, on July 18, 2006, the court denied most of the defendants' motions to dismiss.[3]

### 4. The First Demand For Books And Records

On October 27, 2005, four months after West Coast filed its stockholder derivative suit and while the motion to dismiss the amended complaint was pending in federal court, West Coast served its first demand on Carrier to examine the company's books and records. In its demand letter, West Coast sought documents relating to its pending claims. On November 3, 2005, Carrier responded to West Coast that its demand was an improper attempt to circumvent the federal court's decision to deny additional discovery during the pendency of the motion to dismiss. West Coast took no action in response to Carrier's letter.

---

1. *West Coast Mgmt. & Capital, LLC v. Koenig,* Case No. 05–cv–01134 (D.Colo. Mar. 30, 2006).

2. Pub.L. No. 104–67, 109 Stat. 737 (1995) (codified as amended in various sections of 15 U.S.C.).

3. *Croker v. Carrier Access Corp.,* Case No. 05–cv–01011, 2006 WL 2038011 (D.Colo. July 18, 2006).

### 5. The Second Demand For Books And Records

On April 11, 2006, after the federal derivative suit was dismissed for failure to plead demand futility, West Coast served another books and records demand on Carrier. The second demand is similar to the first and seeks documents relating to the claims in the derivative suit.[4] The demand letter states West Coast's purpose is to investigate wrongdoing and recounts substantively the same allegations found in the dismissed federal derivative complaint. Carrier responded with a letter asserting the demand was improper in light of the federal court's denial of West Coast's request to replead.[5] In an April 20, 2006 letter, West Coast responded that it does not intend to amend its federal complaint, but rather intended to file "a second derivative action should additional information be uncovered."[6] Further elucidating its purpose, West Coast stated its belief that such a course of action was proper because the dismissal was without prejudice.

### 6. The Delaware Action

West Coast filed its complaint in this court on July 3, 2006. The complaint, like the demand letter, articulates that the sole purpose is to investigate wrongdoing. Implicit in both is that the investigation is targeted at reinitiating derivative litigation. Carrier answered the complaint on July 26, 2006 and simultaneously moved for judgment on the pleadings.

### III.

In moving for judgment on the pleadings, Carrier argues that West Coast's purpose is futile and, therefore, not proper, because West Coast cannot bring a second derivative suit. Carrier reads the "without prejudice" language of the federal court's judgment as merely a recognition of the fact that the claims themselves belong to the corporation.[7] The claims, it argues, were dismissed without prejudice, but the named derivative plaintiffs are barred from bringing a second suit based on principles of res judicata, or as described in its reply brief, in the "particular procedural circumstances present here."[8] This interpretation is reinforced, the defendant maintains, by the Colorado federal court's refusal to permit the plaintiffs to replead following dismissal. Therefore, Carrier argues, West Coast lacks standing to bring a second suit and, as a result, because West Coast's only reason for this section 220 demand is to pursue a second suit, West Coast does not have a proper purpose for inspection. The defendant further contends the independent right created by a section 220 action does not itself amount to a proper purpose to permit West Coast to inspect Carrier's books and records in the present case.

West Coast claims it has a proper purpose under section 220 to investigate wrongdoing. It argues that because the federal court's order was without prejudice it must be allowed to examine books and records in order to relitigate the issue of demand futility and bring a second deriva-

---

4. Compl. Ex. 1.

5. Compl. Ex. 2.

6. Compl. Ex. 3.

7. Def.'s Opening Br. 5 ("While repleading or discovery on this issue would itself be an exercise in futility, the dismissal based on the granting of motions to dismiss must be *with-* *out* prejudice. Plaintiffs may wish to follow up with a demand, or the Carrier board itself may with to have the corporation pursue any legal remedies it may have unilaterally.") (citing *Koenig,* slip op. at 24–25) (emphasis in original).

8. Def.'s Reply Br. 2.

tive suit. It bolsters this assertion by pointing out that there is no federal equivalent to Court of Chancery Rule 15(aaa). The plaintiff argues that, as there is nothing that prevents it from bringing a second derivative suit, its purpose to investigate wrongdoing is proper. West Coast further argues that, even if it is precluded from bringing a second derivative suit, section 220 creates an independent right to inspect books and records.

Thus, the court must decide whether a dismissal for failure to plead demand futility results in issue preclusion to the same plaintiff in a subsequent derivative suit. Next, if issue preclusion does apply and it bars a subsequent suit, does West Coast's inability to file a second derivative suit deprive it of a proper purpose for its section 220 demand?

## IV.

■ Under Court of Chancery Rule 12(c), the court will grant judgment on the pleadings if the pleadings fail to reveal the existence of any disputed material fact and the movant is entitled to judgment as a matter of law.[9] Similar to a Rule 12(b)(6) motion to dismiss in a section 220 case, that determination is generally limited to the factual allegations contained in the complaint and demand letter, but it may be appropriate for the court to consider exhibits attached to the pleadings.[10] In this context, the court takes judicial notice of the federal court decisions and orders. In considering a motion for judgment on the pleadings, the court is required to "take the well-pled facts in the complaint as true, and view those facts and any inferences drawn therefrom in the light most favorable to the non-moving party."[11] "A trial court need not blindly accept as true all allegations, nor must it draw all inferences from them in [the non-moving party's] favor unless they are reasonable inferences."[12]

■ Delaware law provides a statutory right for a stockholder to inspect the books and records of a corporation under 8 *Del. C.* § 220. This statutory right is conditioned on form and manner requirements and on the stockholder's purpose for inspection being a proper one.[13] The parties do not seriously dispute that West Coast is a stockholder of Carrier and that it has complied with the technical requirements of section 220 with respect to the form and manner of making its demand. The statute defines "proper purpose" as any purpose "reasonably related to such person's interest as a stockholder."[14] If a books and records demand is to investigate wrongdoing and the plaintiff's sole purpose is to pursue a derivative suit, the plaintiff must have standing to pursue the underlying suit to have a proper purpose.[15] Final-

9. *Desert Equities, Inc. v. Morgan Stanley Lev. Equity Fund, II, L.P.*, 624 A.2d 1199, 1205 (Del.1993); *McMillan v. Intercargo Corp.*, 768 A.2d 492, 499–500 (Del.Ch.2000).

10. *Rag Am. Coal Co. v. AEI Res., Inc.*, 1999 WL 1261376, at *1 (Del.Ch. Dec. 7, 1999).

11. *Meades v. Wilmington Hous. Auth.*, 2003 WL 939863, at *2 (Del.Ch. Mar. 6, 2003).

12. *Grobow v. Perot*, 539 A.2d 180, 187 n. 6 (Del.1988) (quoted in *Werner v. Miller Tech. Mgmt., L.P.*, 831 A.2d 318, 327 (Del.Ch. 2003)).

13. *Highland Select Equity Fund, L.P. v. Motient Corp.*, 906 A.2d 156, 163 (Del.Ch.2006).

14. 8 *Del. C.* § 220(b).

15. *Polygon Global Opps. Master Fund v. West Corp.*, 2006 WL 2947486, at *5 (Del.Ch. Oct. 12, 2006) ("This purpose [investigating wrongdoing] is not reasonably related to Polygon's interest as a stockholder as it would not have standing to pursue a derivative action based on any potential breaches.").

ly, at trial, the plaintiff must prove that it has some credible evidence of wrongdoing sufficient to warrant continued investigation.[16]

To resolve this motion for judgment on the pleadings the court must make two determinations. First, can West Coast pursue a second derivative suit? Second, if it cannot, does it still have a proper purpose for its section 220 demand? In resolving these issues the court is mindful that a second derivative suit might be brought in at least two jurisdictions, Colorado and Delaware. Therefore, the court looks to federal procedural law and both Colorado and Delaware law to determine whether or not West Coast could bring a second derivative suit, despite the dismissal on demand futility of its first derivative suit.[17]

It is common practice in this court where there are inadequate allegations of demand futility to dismiss derivative suits with prejudice as to the named plaintiff, but not as to the corporation or its other stockholders. Court of Chancery Rule 15(aaa) and the Delaware Supreme Court's recent opinion in *Braddock v. Zimmerman*[18] make this result clear, except when express permission to amend is given by the trial judge. What is yet undecided under Delaware law and must be resolved by this court is, in the absence of a dismissal with prejudice to the specific individual derivative plaintiff, whether that plaintiff can file a second case and replead demand futility. That is, in the absence of leave to amend, does a dismissal on demand futility alone operate as a bar to subsequent suit by the same named plaintiff? [19]

This court gives the same preclusive effect to the judgment of another state or federal court as the original court would give. Full faith and credit requires a federal court to apply state law on issue preclusion when the original decision is in state court.[20] While not expressly consti-

16. See *Seinfeld v. Verizon Commc'ns, Inc.*, 909 A.2d 117, 2006 WL 2771558, at *5 (Del. Sept. 25, 2006) ("We remain convinced that the rights of stockholders and the interests of the corporation in a section 220 proceeding are properly balanced by requiring a stockholder to show 'some evidence of *possible* mismanagement as would warrant further investigation.'") (emphasis in original) (citing *Security First Corp. v. U.S. Die Casting & Dev. Co.*, 687 A.2d 563, 568 (Del.1997)); *Saito v. McKesson HBOC, Inc.*, 806 A.2d 113, 117 (Del.2002) ("If activities that occurred before the purchase date are 'reasonably related' to the stockholder's interest as a stockholder, then the stockholder should be given access to records necessary to an understanding of those activities.") (citations omitted).

17. Of course, Delaware law governs the issue of demand futility in the first instance. See *LeBoyer v. Greenspan*, 2006 WL 2987705, at *1 (C.D.Cal. Oct.16, 2006) ("[W]e recognize that as to these claims the issue of demand futility is controlled by the law of the state of incorporation which, in this case, is Delaware law.") (citing *Kamen v. Kemper Fin. Servs.,*

*Inc.*, 500 U.S. 90, 98–100, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991)).

18. 906 A.2d 776 (Del.2006).

19. Various courts and jurisdictions use different and often conflicting terms for this concept including res judicata, claim preclusion, judicial estoppel, direct estoppel, collateral estoppel, and issue preclusion.

20. *San Remo Hotel, L.P. v. City and County of San Francisco*, 545 U.S. 323, 335, 125 S.Ct. 2491, 162 L.Ed.2d 315 (2005) ("28 U.S.C. § 1738 requires federal courts to give preclusive effect to any state-court judgment that would have preclusive effect under the laws of the State in which the judgment was rendered."); *Baker by Thomas v. General Motors Corp.*, 522 U.S. 222, 248–49, 118 S.Ct. 657, 139 L.Ed.2d 580 (1998) ("Full faith and credit measures the effect of a judgment by all the laws of the rendering State, including authoritative rulings of that State's highest court on questions of issue preclusion.") (citations omitted).

tutionally mandated, this court adopts the same policy. When the original decision is in federal court, federal issue preclusion law likely applies.[21] The court also notes, but does not decide as it is unnecessary to this opinion, that while federal law does not directly address the issue of the same plaintiff repleading demand futility in a second suit, recent federal case law, albeit interpreting other states' law, goes even further and holds that collateral estoppel bars all subsequent plaintiffs from relitigating demand futility.[22]

**21.** See M.J. Woods, Inc. v. Conopco, Inc., 271 F.Supp.2d 576, 580 (S.D.N.Y.2003) (noting issue preclusion "operates almost identically" under federal and state law).

**22.** LeBoyer, 2006 WL 2987705, at *1 (denying a second plaintiff the opportunity to bring a case, holding "collateral estoppel bars relitigation of demand futility"); Henik ex rel. LaBranche & Co., Inc. v. LaBranche, 433 F.Supp.2d 372, 381 (S.D.N.Y.2006) (holding all potential stockholder plaintiffs "are precluded, on both res judicata and collateral estoppel grounds, from relitigating the issue of demand futility"); In re Sonus Networks, Inc. S'holder Deriv. Litig., 422 F.Supp.2d 281, 294 (D.Mass. Mar. 31, 2006) (granting a motion to dismiss on the issue preclusion finding "that a privy of the plaintiffs had a full and fair opportunity to litigate the identical demand futility issue in the state court, which reached a final judgment on that issue"); but see Ji v. Van Heyningen, 2006 WL 2521440, at *5 (D.R.I. Aug. 29, 2006) ("[T]he Court finds that Defendants seek to apply issue preclusion [on demand futility] to a nonparty to the initial proceeding, and their efforts to dismiss this action on issue preclusion grounds falters."). Equitable considerations render dubious the majority position on this issue. Preventing subsequent individual plaintiffs from bringing potentially meritorious suits based on additional information gained in a section 220 demand would undercut the purpose of the statute and the policy concern articulated by the Delaware Supreme Court that plaintiffs should employ section 220 before filing suit.

## A. West Coast Cannot Pursue A Second Derivative Suit Because It Is Estopped From Relitigating Demand Futility

 Issue preclusion applies if: (1) the issue sought to be precluded is the same as that involved in the prior action; (2) that issue was actually litigated; (3) the issue was determined by a final and valid judgment; and (4) the determination was essential to the prior judgment.[23] There can be no serious dispute about three of the four prongs. The key issue is whether the federal court's order of dismissal under Rule 23.1 was a final and valid judgment under the third prong.[24] The Delaware

While a prior suit by another plaintiff with similar allegations of demand futility may bar a second plaintiff from filing the same suit, if the second plaintiff makes substantially different allegations of demand futility based on additional information, issue preclusion, from both a logic and fairness standpoint, would not apply.

**23.** Berkowitz v. Vari, 1999 WL 167818, at *4 (Del.Super.Mar. 3, 1999) (citations omitted). The test applied in Berkowitz is for the direct estoppel specie of issue preclusion. For it to apply collaterally to another party, the parties must be in privity. Colorado law on issue preclusion is substantially the same. See Natural Energy Res. Co. v. Upper Gunnison River Water Cons. Dist., 142 P.3d 1265, 1280 (Colo. 2006). The doctrine of issue preclusion bars relitigation when the following criteria are met: (1) the issue precluded is identical to an issue actually litigated and necessarily adjudicated in the prior proceeding; (2) the party against whom estoppel was sought was a party to or was in privity with a party to the prior proceeding; (3) there was a final judgment on the merits in the prior proceeding; and (4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issues in the prior proceeding.

**24.** Braddock, 906 A.2d at 780 ("The test for whether an order is final ... is whether the trial court has clearly declared its intention that the order be the court's 'final act' in the case.").

Supreme Court recently confirmed that a dismissal, even a dismissal without prejudice, is a final order.[25] In making that ruling, the court adopted the majority federal standard that a dismissal without prejudice, without leave to amend, is final. Thus, under federal law, the federal district court's order is a final judgment.[26] The remaining question is whether the "without prejudice" language in the federal court's order eviscerates the issue preclusion bar to a second suit by West Coast.

Regardless of the characterization of the prior dismissal as with or without prejudice, West Coast is estopped from relitigating demand futility.[27] The issue of demand futility was actually litigated and determined by the federal district court. This determination is binding and preclusive on West Coast in any subsequent litigation between the parties as a matter of issue preclusion.[28] The fact that the dismissal was "without prejudice," simply means that the underlying claim—belonging to Carrier, not its stockholders—was not adjudicated.[29]

This court need not find the federal district court's order does or does not amount to res judicata or complete claim preclusion, as the defendant argues. Issue preclusion of demand futility completely bars West Coast from pursuing the claim.[30] Demand futility is a necessary pleading requirement to pursue a derivative claim. Absent a change in the composition of the board of directors, issue preclusion of demand futility bars West Coast

---

**25.** *Id.* at 788–84 ("We hold that a final judgment results ... whenever a complaint is dismissed without prejudice *unless* the plaintiff is expressly granted leave to amend within a certain time.") (emphasis in original).

**26.** *See Moya v. Schollenbarger*, 465 F.3d 444, 448–50 (10th Cir.2006) (discussing case law addressing when a dismissal without prejudice is an appealable final judgment).

**27.** *In re Kauffman Mut. Fund Actions*, 479 F.2d 257, 267 (1st Cir.1973) ("In affirming we must, however, comment upon one phrase in the order of the district court granting the motion to dismiss, that it is 'without prejudice.' This must mean without prejudice as to the substantive cause of action. The dismissal is with prejudice on the issue of the obligation to make a demand on the directors with respect to that substantive complaint."); *Ji*, 2006 WL 2521440, at *4 ("Nevertheless, while the dismissal in state court was 'without prejudice,' it is to be considered a dismissal with prejudice as to the issue actually decided in the first case.").

**28.** The court uses the term "estoppel" or the general phrase "issue preclusion" to describe this result as it is not directly analogous to any defined term. *See* 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure: Jurisdiction and Related Matters § 4402 (1981), at 8–11:

Foreclosure of matters that have been once litigated has been described by a wide variety of phrases. For many years, the "awkward phrase" of "collateral estoppel" has been used. The estoppel is characterized as collateral because the later litigation commonly involves a different cause of action; purists accordingly have felt obliged to refer to "direct estoppel" whenever a first suit was ended in a manner that did not give rise to claim preclusion [also referred to as res judicata], but that did warrant preclusion of a specific issue. The more modern "issue preclusion" phrase encompasses both varieties of estoppel, and warrants the growing acceptance it has found in current federal decisions.

*See also Pastewka v. Texaco, Inc.*, 420 F.Supp. 641, 645 n. 19 (D.Del.1976) (distinguishing res judicata, direct estoppel, and collateral estoppel).

**29.** *City of Wilmington ex rel. Water Dept. v. Lord*, 1981 WL 383083, at *12 (Del.Super. June 8, 1981).

**30.** *Braddock*, 906 A.2d at 784 ("The phrase 'without prejudice' will mean only that the otherwise final judgment does not operate as a res judicata bar to preclude a subsequent lawsuit on the same cause of action.").

from pursuing a second derivative suit based on the same claims. Thus, because the dismissal was functionally "with prejudice" as to West Coast's effort to allege demand futility, West Coast cannot maintain a second suit.[31]

### B. The Federal District Court's Order Also Bars Relitigation Of Demand Futility

■ The same conclusion is reached from the plain language and logic of the federal court's opinion and order. Although the federal court's order was entered without prejudice, the text of the opinion and order makes clear that West Coast is prohibited from relitigating demand futility in another derivative suit. First, it is clear that the federal court issued its order without prejudice in recognition of the fact that the claims belonged to the corporation, not the individual plaintiffs.[32] Second, the court contemplated that the individual plaintiffs might make a demand on the board.[33] Finally, and most significantly, Judge Figa expressly denied

the plaintiffs' request to amend their complaint to "attempt to cure any perceived pleading deficiencies."[34] Thus, the language of the opinion and the decision to deny leave to replead support the conclusion that the without prejudice order was not intended to permit West Coast to relitigate its claim.[35] When, in dismissing on demand excusal grounds, another court has denied discovery and leave to amend, it would undermine that decision for this court to permit the same plaintiff to pursue a section 220 action solely targeted at gaining information to relitigate that prior determination.[36] West Coast's purpose in this circumstance cannot be proper.

### C. West Coast's Purpose To Pursue A Second Derivative Suit Is Not Proper Because It Is Precluded From Pursuing That Suit

■ It is clear that West Coast's sole purpose for investigating claims of wrongdoing is to obtain additional information to replead demand futility in order to pursue

---

31. 18A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4435 (2d ed. 1987) ("Issue preclusion [in cases of dismissals without prejudice] is generally appropriate as to the precise issues resolved, and the dismissal operates as an adjudication on the merits to that extent.").

32. Koenig, slip op. at 24–25 ("While repleading or discovery on this issue would be an exercise in futility, the dismissal based on the granting of motions to dismiss must be without prejudice. Plaintiffs may wish to follow up with a demand or the Carrier board itself may wish to have the corporation pursue any legal remedies it may have unilaterally.").

33. Id.

34. Koenig, slip op. at 24.

35. This is in contrast to opinions where courts of this state have permitted leave to amend. See, e.g., In re Walt Disney Co. Deriv.

Litig., 906 A.2d 27, 35 n. 1 (Del.2006) (noting that the Delaware Supreme Court in Brehm v. Eisner, 746 A.2d 244 (Del.2000) "affirmed the dismissal in part and reversed it in part, remanding the case to the Court of Chancery and granting the plaintiffs leave to replead").

36. United States v. Stauffer Chem. Co., 464 U.S. 165, 176, 104 S.Ct. 575, 78 L.Ed.2d 388 (1984) (articulating the purposes of issue preclusion as "to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication") (White, J. concurring) (citations omitted); see also Henik, 433 F.Supp.2d at 380–81 (S.D.N.Y.2006) ("[I]f this were not the rule, shareholder plaintiffs could indefinitely relitigate the demand futility question in an unlimited number of state and federal courts, a result the preclusion doctrine specifically is aimed at avoiding.") (citation omitted).

a second derivative suit. This purpose is not reasonably related to West Coast's interest as a stockholder as West Coast is not a proper plaintiff to bring such an action. As this court recently discussed in *Polygon v. West*, the Delaware Supreme Court's opinion *Saito v. McKesson HBOC, Inc.* is not to the contrary, and in fact, it mandates this result.[37] The court in *Saito* specifically held that "if the stockholder's only purpose was to institute derivative litigation" there would be "a question as to whether the stockholder's purpose was reasonably related to his or her interest as a stockholder."[38] Here, West Coast articulates no other purpose for investigating wronging. Clearly, West Coast's sole purpose is to use the information it seeks to replead demand futility and craft a second derivative complaint. West Coast is precluded from this course of action. Therefore, West Coast's purpose is not reasonably related to its role as a stockholder, and West Coast does not have a proper purpose to investigate possible wrongdoing.

## D. The Independent Right Created By Section 220 Does Not Eliminate The Proper Purpose Requirement

■■■■ West Coast argues it has a second ground for demanding books and records because section 220 creates a right independent of any underlying claims. This, of course, is a true statement of the law.[39] However, the nature of section 220 as an independent right does not eliminate the proper purpose requirement. The plaintiff states its purpose is "not solely to obtain documents to be used in a second lawsuit but to investigate potential breaches of fiduciary duty by the Company's officers and directors."[40] This demand states no purpose. Although investigating wrongdoing is a proper purpose, it must be to some end. Delaware law does not permit section 220 actions based on an ephemeral purpose, nor will this court impute a purpose absent the plaintiff stating one.[41] Simply put, West Coast must do more than state, in a conclusory manner, a generally accepted proper purpose. West Coast must state a reason for the purpose, i.e., what it will do with the information, or an end to which that investigation may lead.[42] Here, it is clear West Coast's sole

---

37. *Polygon*, 2006 WL 2947486, at *5 (Investigating potential breaches of fiduciary duty "is not reasonably related to [the plaintiff's] interest as a stockholder as it would not have standing to pursue a derivative action based on any potential breaches."); *cf. Saito*, 806 A.2d at 117 ("If a stockholder wanted to investigate alleged wrongdoing that substantially predated his or her stock ownership, there could be a question as to whether the stockholder's purpose was reasonably related to his or her interest as a stockholder, especially if the stockholder's only purpose was to institute derivative litigation.").

38. *Saito*, 806 A.2d at 117.

39. *Kaufman v. Computer Assocs. Intern., Inc.*, 2005 WL 3470589, at *3 (Del.Ch. Dec.13, 2005) ("Fundamentally, the right to proceed under Section 220 to inspect books and records exists independently of any claim the stockholder might ultimately choose to bring.").

40. Pl.'s Answering Br. 7.

41. *Cf. Freund v. Lucent Techs.*, 2003 WL 139766, at *4 (Del.Ch. Jan. 9, 2003) (Section 220 does not authorize a "broad fishing expedition"); *Safecard Servs., Inc v. Credit Card Serv. Corp.*, 1984 WL 8265, at *2 (Del.Ch. Sept.5, 1984) ("[T]he Court may deny inspection ... where the request is made out of sheer curiosity.").

42. This is distinguishable from a case where there is a "credible showing" of "legitimate issues of wrongdoing," and the plaintiff is investigating to determine the nature of the wrongdoing and what further actions may be appropriate based on that information. *Security First*, 687 A.2d at 568. Here, West Coast's sole purpose is clear—to use the information it seeks to relitigate demand futility and pursue a second derivative complaint.

purpose and end is to pursue a second derivative suit—an end barred by issue preclusion.

## V.

For the foregoing reasons, the complaint is DISMISSED and judgment is entered in favor of Carrier. IT IS SO OR-DERED.